# Supreme Court of Florida

_____

No. SC2020-1118

_____

**THE FLORIDA BAR,**
Complainant,

vs.

**MICHAEL CHRISTOPHER GRIECO,**
Respondent.

June 27, 2024

PER CURIAM.

We have for review a referee's report recommending that

Respondent, Michael Christopher Grieco, be found guilty of

professional misconduct in violation of the Rules Regulating The

Florida Bar (Bar Rules), and recommending that he be suspended

from the practice of law for 90 days.[1]  For the reasons discussed

below, we approve the referee's findings of fact and

recommendations as to guilt, but we disapprove the referee's

---

1.  We have jurisdiction.  _See_ art. V, § 15, Fla. Const.

recommendation as to discipline.  We instead suspend Grieco from the practice of law for one year.

## BACKGROUND

In July 2020, the Bar filed a complaint against Grieco, alleging that during a period of time spanning 2016 and 2017, while serving as a city commissioner for Miami Beach and running as a candidate for its mayor, Grieco engaged in conduct that violated Bar Rules 3-4.3 (Misconduct and Minor Misconduct) and 4-8.4(b) (Misconduct; A lawyer shall not "commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects.").  The Bar further alleged that Grieco later made statements that were violative of Bar Rule 4-8.4(c) (Misconduct; A lawyer shall not "engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.").

The allegations concerned Grieco's behavior in connection with an entity known as People for Better Leaders (PBL), a political organization that facilitated contributions to Grieco's mayoral campaign.  The alleged violations of Bar Rules 3-4.3 and 4-8.4(b) arose from Grieco pleading no contest to accepting a campaign contribution donated by an individual in the name of another

individual—a first-degree misdemeanor in violation of section 106.08(7)(a), Florida Statutes (2017). Adjudication was withheld and Grieco was placed on misdemeanor probation. He agreed not to seek elected office during the probationary period, and he resigned from his position as city commissioner. His criminal history was later expunged.

The asserted violations of Bar Rule 4-8.4(c) arose from statements Grieco gave to the *Miami Herald* and to the operator of an internet blog known as *Political Cortadito*. Grieco made statements denying any involvement in the operation and control of PBL. The Bar alleged that Grieco made multiple false or misleading statements to the press, and by extension the public, in violation of Bar Rule 4-8.4(c).

The disciplinary hearing commenced in August 2022. The Bar called a single witness, Karl A. Ross, who testified about his participation in a joint investigation conducted by the State Attorney's Office and the Miami-Dade Commission on Ethics & Public Trust (MDCOE). Ross testified that administrative ethics charges had been brought against Grieco based on allegations that he gave inaccurate statements to the *Miami Herald* and *Political*

*Cortadito*. Ross testified about a formal MDCOE complaint brought against Grieco that alleged violations of the Truth in Government provision of the Citizens' Bill of Rights in the Miami-Dade County Charter. The Bar introduced several documents through Ross, including court records, news articles, MDCOE reports, sworn statements, hearing transcripts, filings from the Florida Division of Elections, and letters from Grieco's counsel.

Grieco called three witnesses to testify on the charged misconduct: an expert on Florida campaign law; an expert in Florida election law and Miami-Dade County political committees; and a member of the Florida House of Representatives. Collectively, these witnesses opined in part that the only persons responsible for a political committee are that committee's officers and bank account signatories, and that because Grieco's name did not appear on PBL's organizational or bank account documents, he had no legal role in PBL and could not direct its operations.

Grieco also testified on his own behalf. He swore that his position as city commissioner did not involve the practice of law, and he insisted that he had never been an officer, director, owner, or signatory of PBL. He testified that he did not believe that the

Truth in Government provision of the Miami-Dade County Charter implicated his duties as a lawyer but that, either way, he did not think any of his statements to the *Miami Herald* or *Political Cortadito* violated the Truth in Government provision. Grieco also testified that *Political Cortadito* has a poor reputation for truthfulness and that it denigrates politicians who are unwilling to pay for favorable treatment, and he claimed that the *Miami Herald* attributed to him quotes he did not actually say. Notably, however, the referee found that Grieco made no effort to correct any misquoted or inaccurate statements published in either source.

Grieco called 17 witnesses to testify in mitigation. These witnesses testified generally that Grieco engaged in good works and community service, that he had a reputation for truth and honesty, and that he was excellent as both a lawyer and an elected official.

Following the disciplinary hearing, the referee submitted a Report of Referee. The referee found that the Bar clearly and convincingly proved violations of Bar Rules 3-4.3, 4-8.4(b), and 4-8.4(c). The referee found that the evidence presented referenced Grieco's actions in political and campaign processes, including public statements he made to the media about political

- 5 -

organizations, and that no misconduct caused harm to clients or involved the practice of law. The referee recommends that we find Grieco guilty of violating all three Bar Rules. As to the sanction, the referee recommends that Grieco be suspended from the practice of law for 90 days. Both Grieco and the Bar now seek review of the referee's report.

## ANALYSIS

### A. The Referee's Findings of Fact and Recommendations as to Guilt.

Our review of a referee's findings of fact is limited; if the referee's findings of fact are supported by competent, substantial evidence in the record, we will not reweigh the evidence or substitute our own judgment for that of the referee. *Fla. Bar v. Schwartz*, 284 So. 3d 393, 396 (Fla. 2019); *Fla. Bar v. Frederick*, 756 So. 2d 79, 86 (Fla. 2000).

When we review a referee's recommendations as to guilt, the referee's factual findings must be sufficient under the applicable rules to support the recommendations. *Fla. Bar v. Shoureas*, 913 So. 2d 554, 557-58 (Fla. 2005). Ultimately, the party challenging a referee's findings of fact or conclusions as to guilt has the burden to

demonstrate "that there is no evidence in the record to support those findings or that the record evidence clearly contradicts the conclusions." *Fla. Bar v. Germain*, 957 So. 2d 613, 620 (Fla. 2007).

Here, the referee found that the Bar proved by clear and convincing evidence that Grieco violated Bar Rules 3-4.3, 4-8.4(b), and 4-8.4(c). The referee recommends that Grieco be found guilty of violating all three Bar Rules. Grieco challenges the referee's findings and recommendations as to guilt.

### Bar Rule 3-4.3

Bar Rule 3-4.3 states that a lawyer shall not commit "any act that is unlawful or contrary to honesty and justice."

The referee found that the Miami-Dade County State Attorney's Office charged Grieco with accepting a campaign donation from an individual in the name of another individual. Grieco pled no contest to the first-degree misdemeanor charge. Adjudication was withheld, and Grieco was placed on misdemeanor probation for 12 months. The referee found that these facts constituted a determination of guilt under Bar Rule 3-7.2(a)(2) (Procedures on Criminal or Professional Misconduct; Discipline on Determination or Judgment of Guilt of Criminal Misconduct;

Discipline on Removal from Judicial Office). The referee further found that Grieco admitted to the above facts during the Bar's investigation and that the testimony from Ross (who was present when Grieco entered his no-contest plea) about the plea agreement and MDCOE investigation provided further evidence of misconduct.

We agree that the withholding of adjudication following Grieco's no-contest plea constitutes a determination of guilt under Bar Rule 3-7.2(a)(2). We also observe that while Grieco made admissions to his no-contest plea and to the misdemeanor offense in his responses to the Bar's investigation, he later denied the same facts in his answer to the Bar complaint.

Grieco insists that section 943.059, Florida Statutes (2017), prohibits expunged records from being used as evidence in Bar disciplinary proceedings. He claims that under the 2017 version of section 943.059(4)(a), expunged records may only be introduced in certain enumerated types of proceedings, and that while Bar *admission* proceedings are enumerated, Bar *disciplinary* proceedings are not. Grieco misreads the statute. Section 943.059(4)(a) does not say that expunged criminal records are inadmissible in Bar disciplinary proceedings; it merely states that

aside from certain enumerated circumstances (such as Bar admission proceedings), a person to whom the statute applies "may lawfully deny or fail to acknowledge the arrests covered by the sealed record." § 943.059(4)(a), Fla. Stat. (2017). But Grieco is not being accused of perjury, and whether he could lawfully deny an arrest has never been an issue in this case.

Given that the evidence of Grieco's criminal history was admissible at the disciplinary proceeding, we find that the criminal information charging Grieco with violating section 106.08(7)(a) by willfully accepting a contribution from one individual in the name of another; the letter to the Bar from Grieco's counsel reporting his no-contest plea admitting to the criminal charge; and the testimony of Ross, who participated in the joint investigation with the MDCOE and State Attorney's Office and was present for Grieco's plea, all constitute competent, substantial record evidence supporting the referee's finding that Grieco engaged in an unlawful act. For these reasons, we approve the referee's recommendation as to guilt and find Grieco guilty of violating Bar Rule 3-4.3.

Bar Rule 4-8.4(b) provides that a lawyer shall not "commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects." The referee's factual findings as to Bar Rule 3-4.3 served as the primary basis for his findings on Bar Rule 4-8.4(b).

Grieco argues that even if the evidence introduced at the disciplinary hearing establishes that he committed a crime, the Bar failed to prove that the crime was one that "reflects adversely on [his] honesty, trustworthiness, or fitness as a lawyer in other respects," as required to prove a violation of Bar Rule 4-8.4(b). He argues that because the charged offense did not involve the practice of law, the crime of conviction was not one that reflects adversely on his fitness as a lawyer. He also argues that because fraud, deceit, and misrepresentation are not essential elements of section 106.08(7)(a), the crime of conviction is not a crime of dishonesty for purposes of Bar Rule 4-8.4(b).

We find Grieco's arguments unpersuasive. Knowingly accepting campaign donations from one individual, through or in the name of another (the offense to which Grieco pled no contest) is

a dishonest act. We agree with the referee that the nature of Grieco's criminal act establishes conduct that reflects adversely on his honesty and on his trustworthiness—two components of fitness as a lawyer as expressly identified in Bar Rule 4-8.4(b). Because the record evidence does not clearly contradict the referee's conclusion that Grieco's criminal act reflects adversely on his honesty, trustworthiness, or fitness as a lawyer in other respects, we approve the referee's recommendation and find Grieco guilty of violating Bar Rule 4-8.4(b).

## Bar Rule 4-8.4(c)

Bar Rule 4-8.4(c) prohibits lawyers from "engag[ing] in conduct involving dishonesty, fraud, deceit, or misrepresentation." While Bar Rule 4-8.4(c) requires a showing of intent, establishing intent only requires proof that the lawyer "deliberately or knowingly engaged in the activity in question." *Fla. Bar v. Smith*, 866 So. 2d 41, 46 (Fla. 2004). And as relevant here, to establish a violation of Bar Rule 4-8.4(c), reliable hearsay is admissible. *Fla. Bar v. Bischoff*, 212 So. 3d 312, 318 (Fla. 2017). Though we may assess the reliability of the hearsay evidence, we do not second-guess a

- 11 -

referee's findings as to evidentiary weight or witness credibility. *See Fla. Bar v. Vannier*, 498 So. 2d 896, 898 (Fla. 1986).

In the proceedings below, Grieco argued to the referee that the Bar failed to prove by clear and convincing evidence that any quotes printed in the *Miami Herald* or *Political Cortadito* were in fact uttered by him or that his statements were given proper context. He further argued that the Bar did not prove that his statements were deliberately or knowingly false or misleading, and he urged the referee not to adopt the MDCOE's findings that he made false or misleading statements as proof of violations of Bar Rule 4-8.4(c).

The referee rejected Grieco's arguments, finding that the MDCOE report—which included findings that Grieco violated the Truth in Government provision of the Citizen's Bill of Rights on two occasions—was sufficient to support violations of Bar Rule 4-8.4(c). Of note, the referee emphasized that the Bar also submitted the evidence and documents relied upon by MDCOE to establish that Grieco was heavily involved with every aspect of the creation, operation, and funding of PBL. Such evidence undermined Grieco's public statements disavowing any involvement with or knowledge of

- 12 -

PBL.[2]  And that evidence also showed that Grieco never made any attempt to publicly correct what he now claims were inaccurate representations of his earlier comments.

Furthermore, Grieco made admissions during the disciplinary process that directly contradicted his earlier public statements on his relationship with PBL.  For example, during the Bar proceedings, when trustworthiness as a lawyer had become an issue, Grieco changed his story and asserted that he had actually never been retained as a lawyer for PBL and had never performed any legal services for the organization.  He attempted to explain these contradictions by stating in his briefs that he was only retained as PBL's lawyer after PBL's officers became subjects of

---

2.  The referee also observed that one of the *Miami Herald* articles reported that forensic handwriting examiners had identified handwriting on a PBL document as Grieco's handwriting.  After the handwriting report was made public, Grieco stated for the first time that he had in fact been involved with PBL, but as its lawyer, and that the confidential attorney-client relationship required him to initially deny any involvement.  The referee found the handwriting report to be significant—not for its truth, but because Grieco and his team "shifted the official party line" after the report's release.  In addition, the referee found that PBL's two officers were both close friends of Grieco and that both admitted they performed very few services for PBL.

investigation. He insists that his assertions about never being PBL's lawyer and never performing legal services were meant to refer only to the period of his alleged misconduct. But this creates yet another contradiction: if Grieco only began performing legal services after investigations began, then there would have been no attorney-client relationship to justify his initial denials of involvement with PBL.

Grieco asserts that the media articles are unreliable as proof of his statements, because the articles could easily have misquoted him or taken his words out of context. We acknowledge the potential for error in newspapers and other media. However, the referee's findings are not based simply on Grieco's initial statements as reported in the articles. Instead, in determining that Grieco made false or misleading public statements, the referee considered the articles, Grieco's shifting storyline, the MDCOE investigation into Grieco's involvement with PBL, and the admissions Grieco made during the Bar grievance process. As aptly noted by the referee, "it is clear that [Grieco's] narrative and testimony on this topic change depending on the audience to whom it is presented, and the goal [he] wishes the statements to accomplish."

- 14 -

Moreover, we emphasize that we are not scrutinizing political speech made by Grieco while campaigning or otherwise engaging in the political arena. We are aware that the standard governing the propriety of a lawyer's statements often depends on the factual context and setting of such statements. Here, the focus is not on statements of a political nature, but on the referee's findings that, on more than one occasion, Grieco intentionally deceived or mislead the public about his involvement with PBL.

Consistent with the discussion above, we find that competent, substantial evidence in the record supports the referee's finding that Grieco deliberately engaged in a pattern of dishonest conduct by making repeated false or misleading statements. We further conclude that Grieco has failed to show that the referee's recommendations as to guilt are clearly contradicted by the record. Accordingly, we approve the referee's findings of fact and recommendations as to guilt and, thus, find Grieco guilty of violating Bar Rule 4-8.4(c).

## B.  The Referee's Recommendation as to Discipline.

We now turn to the referee's recommendation to impose a 90-day suspension as a sanction for Grieco's misconduct. A referee's

- 15 -

recommended discipline must have a reasonable basis in existing case law and the Florida Standards for Imposing Lawyer Sanctions (Standards).  *See Fla. Bar v. Picon*, 205 So. 3d 759, 765 (Fla. 2016); *Fla. Bar v. Temmer*, 753 So. 2d 555, 558 (Fla. 1999).  Our review of a referee's recommendation as to discipline is broader than our review of a referee's findings of fact, for it is ultimately this Court's responsibility to determine the appropriate discipline.  *Fla. Bar v. Alters*, 260 So. 3d 72, 83 (Fla. 2018) (citing *Fla. Bar v. Anderson*, 538 So. 2d 852, 854 (Fla. 1989)); *see also* art. V, § 15, Fla. Const.  That said, we have recognized that a referee "is in a unique position to assess the credibility of witnesses, and his judgment regarding credibility should not be overturned absent clear and convincing evidence that his judgment is incorrect."  *Fla. Bar v. Tobkin*, 944 So. 2d 219, 224 (Fla. 2006) (quoting *Fla. Bar v. Thomas*, 582 So. 2d 1177, 1178 (Fla. 1991)).

In this case, the referee considered the following Standards: 5.1(b) (Failure to Maintain Personal Integrity; Suspension); 6.1(d) (False Statements, Fraud, and Misrepresentation; Admonishment); 7.1(d) (Deceptive Conduct or Statements; Admonishment); and 8.1(b) (Violation of Court Order or Engaging in Subsequent Same or

Similar Misconduct; Suspension). We agree with the referee that suspension is the appropriate sanction. We question the referee's reliance on the admonishment subdivisions of Standards 6.1 and 7.1. Subdivision (d) of each of these Standards addresses *negligent* dishonest conduct, which is incongruous with the referee's finding that Grieco "chose to make misleading statements" and with the referee's findings on Grieco's failure to truthfully clarify statements, his shifting narrative following the handwriting report, and his misrepresentations about his role as PBL's lawyer. According to the referee, the Bar established clearly and convincingly that Grieco "intended to mislead" the public. Nevertheless, we agree with the referee that the suspension subdivisions of Standards 5.1 and 8.1 apply, and both of those Standards indicate that suspension is the appropriate sanction.

Next, we consider the referee's findings on the applicable aggravating and mitigating circumstances. "Like other factual findings, a referee's findings of mitigation and aggravation carry a presumption of correctness and will be upheld unless clearly erroneous or without support in the record." *Fla. Bar v. Scheinberg,* 129 So. 3d 315, 319 (Fla. 2013) (quoting *Germain,* 957 So. 2d at

- 17 -

621). A finding that an aggravating or mitigating factor applies—or a failure to find that an aggravating or mitigating factor applies—is afforded the same deference. *Id.* "The fact that there is some evidence in the record to support a finding that a mitigating [or aggravating] factor might apply does not mean that the referee should have necessarily found it applicable." *Fla. Bar v. Herman*, 8 So. 3d 1100, 1106 (Fla. 2009). Ultimately, the party challenging a referee's findings of fact on aggravation or mitigation "must establish there is a lack of evidence in the record to support such findings or that the record clearly contradicts the referee's conclusions." *Fla. Bar v. Horton*, 332 So. 3d 943, 949 (Fla. 2019) (quoting *Fla. Bar v. Glueck*, 985 So. 2d 1052, 1056 (Fla. 2008)).

Here, the referee found the existence of seven aggravators: 3.2(b)(1) (prior disciplinary offenses); 3.2(b)(2) (dishonest or selfish motive); 3.2(b)(3) (a pattern of misconduct); 3.2(b)(4) (multiple offenses); 3.2(b)(6) (submission of false evidence, false statements, or other deceptive practices during the disciplinary process); 3.2(b)(7) (refusal to acknowledge the wrongful nature of the conduct); and 3.2(b)(9) (substantial experience in the practice of law). The referee also found several mitigating factors.

The referee's findings as to the applicable aggravators and mitigators have record support and are not clearly erroneous. However, in light of Grieco's continued dishonest conduct over time, including the crime of dishonesty underlying this case, the multiple misleading public statements regarding his involvement with PBL, the submission of false or misleading statements during the disciplinary process, and past misconduct for which Grieco was previously disciplined (conduct that involved misrepresentations to law enforcement about his role in an investigation), we conclude that the referee should have afforded greater weight to the pattern of misconduct aggravator.

To be clear, we recognize that mitigation testimony was provided by no less than seventeen witnesses, including judges and elected officials, who spoke of Grieco's good works and rehabilitation efforts. We also acknowledge the referee's finding that Grieco has taken steps to correct deficiencies in his campaign and electioneering conduct. However, we find that Grieco's continuous shifting of the narrative (including presentation of yet another new narrative in his briefing and oral argument before this Court), and his reliance on the technically accurate nature of

statements that were clearly intended to mislead the public, indicate a troubling character flaw that requires a period of rehabilitation before he can be readmitted to the Bar.

As for the appropriate length of time for the rehabilitative suspension, we must examine existing case law. *See Fla. Bar v. Maurice*, 955 So. 2d 535, 541 (Fla. 2007) (explaining that because the Standards "do not suggest the appropriate length of a suspension, the Court examines caselaw to determine whether the referee's recommendation . . . has a reasonable basis").

Looking at relatively recent analogous cases, we first take note of *Germain*, 957 So. 2d at 623-24, where we imposed a one-year suspension on a lawyer who lied under oath in connection with ongoing legal proceedings. We are also mindful of *Florida Bar v. MacNamara*, 132 So. 3d 165 (Fla. 2013), a case relied on by the referee and cited by Grieco in the briefing of this case. In *MacNamara*, a lawyer misrepresented to the probate court that he had filed a tax return, despite knowing he had not sent the IRS a signed return. *Id.* at 172. The lawyer also sent a deliberately misleading cover letter to the IRS and failed to honestly inform his client about the status of the return. *Id.* Finally, the lawyer made

misrepresentations to the Bar, claiming he filed the tax return earlier than he had. *Id.* In *MacNamara,* we determined that the appropriate sanction was a 90-day suspension, making note of the absence of any prior disciplinary history and of the lawyer's acknowledgment that he had engaged in misconduct. *Id.* at 173.

Grieco argues that he should get a lighter sanction than the 90-day suspension issued in *MacNamara.* However, Grieco not only engaged in multiple instances of dishonest behavior (including misrepresentations to the Bar), but he also submitted false statements during the disciplinary proceeding to distance his prior misconduct from his professional duties as a lawyer, and he committed a crime of dishonesty when he solicited, facilitated, and accepted an unauthorized campaign contribution in an illegal manner. And unlike the attorney in *MacNamara,* Grieco has not owned up to his misconduct, and he has received discipline in the past for prior dishonest conduct. We believe Grieco's actions warrant a harsher sanction than the conduct in *MacNamara,* particularly in light of the aggravating circumstances discussed above.

Finally, we note our decision in *Florida Bar v. Kinsella*, 260 So. 3d 1046 (Fla. 2018). In *Kinsella*, a lawyer pled no contest to a criminal misdemeanor, and like in this case, adjudication was withheld. *Id.* at 1047. Also like in this case, the lawyer's criminal conduct in *Kinsella* did not involve the practice of law. *Id.* We found that substantial mitigation existed in *Kinsella*, including the lawyer's full cooperation with law enforcement, her voluntary entry into a treatment contract, her efforts to return the money at issue, and the fact that she had already been subjected to other penalties for the same misconduct. Notably, the referee in this case found many of the same mitigating factors. But unlike Grieco, the lawyer in *Kinsella* also had no prior Bar disciplinary history, was inexperienced in the practice of law, had personal or emotional problems, and made serious expressions of remorse. *Id.* at 1049. We suspended the lawyer in *Kinsella* for a period of three years, and while that lawyer's conduct was egregious (including stealing money that had been entrusted to her), we focused on the significant aggravating circumstances—which included a dishonest and selfish motive and a pattern of misconduct. *Id.* at 1050. Both of those serious aggravators are also present in this case.

Based on the existing caselaw, and in consideration of the aggravating and mitigating circumstances, we conclude that a one-year rehabilitative suspension is the appropriate sanction for Grieco's misconduct.

## CONCLUSION

In conclusion, we approve the referee's findings of fact and recommendations as to guilt. However, we disapprove the referee's recommendation for a 90-day suspension and instead suspend Grieco from the practice of law for one year. The suspension will be effective 30 days from the filing of this opinion so that Grieco can close out his practice and protect the interests of existing clients. If Grieco notifies this Court in writing that he is no longer practicing and does not need the 30 days to protect existing clients, this Court will enter an order making the suspension effective immediately. Grieco shall fully comply with Rule Regulating The Florida Bar 3-5.1(h). Grieco shall also fully comply with Rule Regulating The Florida Bar 3-6.1, if applicable. In addition, Grieco shall accept no new business from the date this order is filed until he is reinstated. Grieco is further directed to comply with all other terms and conditions of the report.

- 23 -

Judgment is entered for The Florida Bar, 651 East Jefferson Street, Tallahassee, Florida 32399-2300, for recovery of costs from Michael Christopher Grieco in the amount of $12,572.00, for which sum let execution issue.

It is so ordered.

MUÑIZ, C.J., and CANADY, LABARGA, GROSSHANS, FRANCIS, and SASSO, JJ., concur.
COURIEL, J., recused.

THE FILING OF A MOTION FOR REHEARING SHALL NOT ALTER THE EFFECTIVE DATE OF THIS SUSPENSION.

Original Proceeding – The Florida Bar

Joshua E. Doyle, Executive Director, Mark Lugo Mason, Bar Counsel, and Patricia Ann Toro Savitz, Staff Counsel, The Florida Bar, Tallahassee, Florida; and Jennifer R. Falcone, Bar Counsel, The Florida Bar, Miami, Florida,

for Complainant

Benedict P. Kuehne of Kuehne Davis Law, P.A., Miami, Florida,

for Respondent